E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ROGER A. HSIEH (Cal. Bar No. 294195)
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorneys
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0600/0756
      Facsimile: (213) 894-6265
      E-mail: Roger.Hsieh@usdoj.gov
              Valerie.Makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-CR-00561-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT KRISTOPHER BRENT COBB |
| v. | |
| KRISTOPHER BRENT COBB, | Hearing Date: January 30, 2023 |
| Defendant. | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Roger A. Hsieh and Valerie L. Makarewicz, hereby files its sentencing position with respect to defendant KRISTOPHER BRENT COBB.

//

//

1    This sentencing position is based upon the attached memorandum

2  of points and authorities, the Presentence Investigation Report, the

3  under-seal victim-impact statement, the files and records in this

4  case, and such further evidence and argument as the Court may permit.

5   Dated: January 9, 2023              Respectfully submitted,

6                                       E. MARTIN ESTRADA
                                        United States Attorney
7
                                        SCOTT M. GARRINGER
8                                       Assistant United States Attorney
                                        Chief, Criminal Division
9

10                                        /s/
                                        ROGER A. HSIEH
11                                      VALERIE L. MAKAREWICZ
                                        Assistant United States Attorneys
12
                                        Attorneys for Plaintiff
13                                      UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

After Victim 4 lost her father, mother, and brother in a murder-suicide and was nearly killed herself by her father, defendant KRISTOPHER BRENT COBB saw an opportunity to enrich himself and further victimize Victim 4.  The murder-suicide left Victim 4 with no surviving immediate family members, and within days, defendant began a fraudulent scheme in which he took over accounts belonging to Victim 4 and caused losses of nearly $150,000.

For his crimes, a grand jury returned an Indictment charging defendant with: (1) conspiracy to commit bank fraud (18 U.S.C. § 1349); (2) bank fraud (18 U.S.C. § 1344(2)); and (3) aggravated identity theft (18 U.S.C. § 1028A(a)(1)).  Pursuant to the parties' plea agreement (Dkt. 26), defendant pleaded guilty to Count 1 (conspiracy to commit bank fraud) and Count 4 (aggravated identity theft) (Dkt. 27).

In the United States Pretrial and Probation Office's ("USPO") Presentence Investigation Report ("PSR"), it determined that: (1) defendant's adjusted offense level is 17; (2) defendant's criminal history category is III; and (3) the applicable sentencing guidelines range is 21 to 27 months (Count 1) plus a mandatory 24-month consecutive sentence of imprisonment (Count 4), two to five years' supervised release, and a fine from $7,500 to $1,250,000. (Dkt. 29.)  The USPO also filed a disclosed recommendation letter in which it recommended that the Court sentence defendant to 48 months' imprisonment, three years' supervised release, and the mandatory $100 special assessment.  (Dkt. 28.)

1      The government concurs with the USPO's calculation of

2  defendant's offense level, criminal history category, and sentencing

3  guidelines range.  For the reasons outlined below, the government

4  submits that a total sentence of 51 months' imprisonment --

5  consisting of a 27-month sentence on Count 1 plus the mandatory 24-

6  month consecutive sentence on Count 4 -- three years' supervised

7  release, a $100 special assessment, and an order requiring defendant

8  to pay $137,572.10 in restitution, is sufficient, but not greater

9  than necessary, to achieve the goals of sentencing set forth in 18

10  U.S.C. § 3553(a).

11  **II.   FACTUAL BACKGROUND**

12      On September 11, 2019, Victim 1 murdered Victim 2 (his wife) and

13  Victim 3 (their son), attempted to kill Victim 4 (their daughter),

14  and then, killed himself.  The deaths of Victims 1, 2, and 3 and the

15  attempted murder of Victim 4 were covered in numerous news articles

16  published by the print and broadcast media in Los Angeles and

17  elsewhere.  (PSR ¶ 12.)

18      Within two days of the murder-suicide, defendant put his plan in

19  motion to defraud the surviving daughter, Victim 4.  As was

20  reasonably foreseeable to defendant, Victim 4 was in a fragile

21  emotional state after her near death experience and the death of her

22  family, and as a result, did not closely monitor Victim 1 and Victim

23  2's financial accounts after their deaths.  (PSR ¶ 14.)  On September

24  13, 2019, defendant created two fraudulent email addresses, one in

25  the name of deceased Victim 1 and one in the name of deceased Victim

26  2.  (PSR ¶ 17.)  The same day, defendant used Victim 1's cell phone

27  number to call Barclays Bank and requested that the bank increase the

28

1  credit limit of Victim 1's Barclays credit card and add defendant as

2  an authorized user of Victim 1's Barclays credit card.  (PSR ¶ 17.)

3  Defendant also impersonated Victim 1 using Victim 1's cell phone

4  number and requested that Capital One Bank add defendant as an

5  authorized user of Victim 1's Capital One credit card.  (PSR ¶ 17.)

6  On September 28, 2019, defendant attempted to withdraw approximately

7  $8,566 from a Union Bank ATM in Los Angeles, California, using Victim

8  1's Capital One card in defendant's name.  (PSR ¶ 18.)

9  During his fraudulent scheme, defendant used a fraudulently

10  opened Post Office Box in Victim 1's name, used Victim 1's credit

11  cards while in Puerto Rico, caused unauthorized transfers from

12  retirement accounts to purchase gold, and made various credit card

13  purchases causing actual and intended losses of approximately

14  $146,139.  (PSR ¶¶ 20-21.)

15  **III.  THE PRESENTENCE INVESTIGATION REPORT CORRECTLY CALCULATES**

16  **DEFENDANT'S GUIDELINES RANGE**

17  The USPO calculated defendant's adjusted offense level as 17

18  using: a base offense level of 7 (USSG § 2B1.1(a)(1)); an eight-level

19  enhancement for a loss of more than $95,000 but not more than

20  $150,000 (USSG § 2B1.1(b)(1)(E)); and a two-level vulnerable victim

21  enhancement (USSG § 3A1.1(b)(1)). (PSR ¶¶ 32-39.)  After a three-

22  level reduction for acceptance of responsibility, the USPO calculated

23  defendant's total offense level as 14.  (PSR ¶ 43.)  The USPO also

24  calculated a criminal history category III.  (PSR ¶¶ 55-56.)  Based

25  on a total offense level of 14 and a criminal history category of

26  III, the USPO determined that the applicable guidelines range is 21 –

27  27 months' imprisonment for Count 1 <u>plus</u> a mandatory 24-month

28  consecutive sentence for Count 4 (PSR ¶¶ 96-99), two to five years'

3

1   supervised release (PSR ¶ 103), a $7,500 to $1,250,000 fine (PSR

2   ¶ 109), $137,572.10 in restitution (PSR ¶ 111), and a $100 special

3   assessment (PSR ¶ 108).  The government does not object to the PSR's

4   calculations.

5        Here, the parties agree, and the evidence establishes that

6   defendant caused $137,572.10 in actual losses (PSR ¶ 134; Dkt. 26.)

7   Thus, an 8-level enhancement for a loss of more than $95,000 under

8   USSG § 2B1.1(b)(1)(E) is appropriate.

9        Under USSG § 3A1.1(b)(1), defendant knew or should have known

10  that a victim of the offense was a vulnerable victim, and thus, the

11  two-level enhancement applies.  A "vulnerable victim" means a person

12  who is a victim of the offense of conviction (including relevant

13  conduct) and who is (1) unusually vulnerable due to a "physical or

14  mental condition"; or (2) "who is otherwise particularly susceptible

15  to the criminal conduct."  USSG § 3A1.1, Application Note 2.

16       Victim 4 qualifies as a vulnerable victim.  First, defendant

17  knew about the well-publicized murder-suicide of Victim 4's family

18  before he engaged in his fraudulent scheme and thus knew or should

19  have known Victim 4 was a vulnerable victim.  (PSR ¶ 13; Dkt. 26.)

20  Second, Victim 4 was a victim in defendant's bank fraud conspiracy

21  and aggravated identity theft offense, the offenses of conviction.

22  Defendant took over accounts belonging to Victim 1 and Victim 2 for

23  which Victim 4 was the surviving beneficiary.  (PSR ¶¶ 14, 16.)

24  Third, defendant admits, that as was reasonably foreseeable to him,

25  Victim 4 was in a fragile emotional state after her near death

26  experience and the horrific deaths of her family members, and as a

27  result, Victim 4 did not closely monitor Victim 1 and Victim 2's

28  financial accounts after their deaths.  (PSR ¶ 14; Dkt. 26.)  As a

1  young woman in her 20s, Victim 4 had to navigate an extremely

2  traumatizing and well-publicized crisis without the help of any

3  immediate family members.  The emotional trauma faced by Victim 4 is

4  well explained by Victim 4's own victim-impact statement filed

5  concurrently under seal.

6       Case law also supports the application of the vulnerable victim

7  enhancement.  The Court only needs to find that Victim 4 is

8  "vulnerable" by a preponderance of the evidence.  See United States

9  v. Dare, 425 F.3d 634, 642 (9th Cir. 2005).  Appellate courts,

10  including the Ninth Circuit, have affirmed the application of a

11  vulnerable victim enhancement by district courts that considered

12  emotional harm and the recent death of a family member.  See, e.g.,

13  United States v. Haggard, 41 F.3d 1320, 1325-26 (9th Cir. 1994)

14  (affirming vulnerable victim enhancement for defendant who caused

15  emotional harm to family members who lost daughter to murder); United

16  States v. Williams, 441 F.3d 716, 725-26 (9th Cir. 2006) (affirming

17  vulnerable victim enhancement after considering several factors,

18  including older victim "had just suffered the death of his brother");

19  United States v. Parolin, 239 F.3d 922, 926-27 (7th Cir. 2001)

20  (affirming vulnerable victim enhancement for widow who was defrauded

21  less than six months after husband died).  The heir to an estate can

22  also be a vulnerable victim.  See United States v. Seward, 272 F.3d

23  831, 840-41 (7th Cir. 2001) (affirming vulnerable victim enhancement

24  for heir of an estate due to age and location).  The facts of this

25  case, Application Note 2 to USSG § 3A1.1, and case law all support

26  the application of a vulnerable victim enhancement.

27

28

**IV. THE GOVERNMENT'S RECOMMENDED SENTENCE IS REASONABLE AND APPROPRIATE PURSUANT TO THE 3553(A) FACTORS**

The government requests that the Court adopt the PSR's factual findings and guidelines calculations. The government also requests that the Court adopt the government's sentencing recommendation and sentence defendant to a total of 51 months' imprisonment -- consisting of a 27-month sentence on Count 1 plus the mandatory 24-month consecutive sentence on Count 4 -- three years' supervised release, and order that defendant pay $137,572.10 in restitution and the mandatory $100 special assessment.

The recommended sentence, which is at the high end of the applicable guidelines range for Count 1 and includes the mandatory 24-month consecutive sentence for Count 4, is appropriate given the 3553(a) factors, including the nature and circumstances of the offense, history and characteristics of defendant, and the need to afford adequate deterrence for criminal conduct. These factors weigh in favor of a sentence of 51 months' imprisonment.

**A. Nature and Circumstances of the Offense**

Defendant's crimes were cruel and calculated. The widely publicized deaths of Victims 1, 2, and 3, and the dramatic escape of Victim 4 throughout the Los Angeles area provided an opportunity for defendant to easily criminally appropriate the identities of Victims 1 and 2 within days of their death. Victim 4, left in the wake of the horrific murder-suicide, was unusually vulnerable to defendant's crimes. Defendant specifically chose Victims 1 and 2 because they were defenseless —- the only other person to protect Victims 1 and 2 from the harm caused by defendant was Victim 4, herself unguarded. Victim 4 thus suffered not only financial harm but also fear and

6

1  emotional harm caused by defendant, on top of her grief and mourning

2  caused by the loss of her entire immediate family.  One can easily

3  imagine the distress a victim of a horrendous crime must face who

4  then is forced to turn her attention to safeguarding her financial

5  assets.  Defendant's predation upon Victims 1 and 2 was not only to

6  plunder the estate of Victims 1 and 2, but was perpetrated upon

7  Victim 4 at the most difficult and complicated moment of her life.

8  Defendant's crimes were grotesque -- and involved the creation of

9  email addresses, takeover of cell phones, opening a P.O. Box,

10  impersonating Victim 1 on the phone to banks, the takeover of

11  multiple accounts, and other actions -- and warrant a serious term of

12  incarceration.

13      **B.    History and Characteristics of Defendant**

14      In mitigation, defendant is educated and has learned many

15  professional trades (PSR ¶¶ 83-86).  He has been able to hold a

16  variety of jobs, many that pay a good wage.

17      However, in aggravation, since defendant was young, he has been

18  arrested, then convicted for crimes in growing seriousness and

19  severity.  Defendant's first foray into identify theft began over a

20  decade ago.  (PSR ¶¶ 49-60).  Defendant showed a lack of respect for

21  authority by violating his probation in a prior fraud case.  (PSR

22  ¶ 53.)  Despite serving jail time for his fraud offenses, in 2019,

23  defendant, made calculated choices to engage in the instant offenses,

24  likely informed by his ability to assess his risk of detection and

25  prosecution.

26      **C.    The Need to Afford Adequate Deterrence to Criminal Conduct**

27      Deterrence is a key reason why this Court should sentence

28  defendant to a substantial term of imprisonment.  Defendant, with his

7

1   previous identity theft convictions, needs (again) to be specifically

2   deterred.   Defendant's prior light sentences of 60 and 90 days in

3   jail have not deterred him from the instant criminal conduct.   (PSR

4   ¶¶ 53-54.)   Victim 4 notes that she is terrified of defendant

5   recommitting his crimes.   The community, in general, also needs to be

6   aware that the theft of money and identity upon persons, especially

7   vulnerable victims, will not be tolerated.

8   **V.   CONCLUSION**

9       For the foregoing reasons, the government submits that its

10  recommended sentence is sufficient, but not greater than necessary,

11  given the history and characteristics of defendant and the nature and

12  circumstances of the offense.   Accordingly, the government requests

13  that the Court sentence defendant to a total of 51 months'

14  imprisonment -- consisting of a 27-month sentence on Count 1 plus the

15  mandatory 24-month consecutive sentence on Count 4 -- three years'

16  supervised release, and order that he pay $137,572.10 in restitution

17  and the mandatory $100 special assessment.

18

19

20

21

22

23

24

25

26

27

28