CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
(E-Mail: Cuauhtemoc_Ortega@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012
Telephone: (213) 894-1462
Facsimile: (213) 894-0081

Attorneys for Defendant
KRISTOPHER BRENT COBB

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KRISTOPHER BRENT COBB,<br><br>Defendant. | Case No. 2:21-CR-561-JFW<br><br>**DEFENDANT KRISTOPHER BRENT COBB'S SENTENCING MEMORANDUM** |

Defendant Kristopher Brent Cobb, through counsel, hereby submits this sentencing memorandum for the Court's consideration prior to sentencing.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 9, 2023       By  /s/ Adam Olin
                                 ADAM OLIN
                                 Deputy Federal Public Defender
                                 Attorneys for Kristopher Brent Cobb

## I. INTRODUCTION

Mr. Cobb participated in a conspiracy to impersonate two individuals who died in tragic circumstances and steal money in their accounts. He and his multiple co-conspirators were successful, ultimately taking approximately $140,000. But beyond the financial loss to the estates of these two individuals, their daughter, who survived the incident, suffered the additional harm of trying to deal with the offense soon after her parents death. That fact is undoubtedly aggravating. But in fashioning the correct sentence under § 3553, the Court should consider Mr. Cobb's decision to plead guilty to the top counts of the indictment and his demonstrated capacity to succeed, including his stability since the conspiracy ended in 2019. The requested sentence of three years is a dramatic increase over his previous longest sentence of 90 days in county jail, ensuring the requested sentence will have a deterrent effect. Imposing an additional two years in custody, as the government requests, does little to serve the goals of § 3553, particularly where, as here, Mr. Cobb appears to be the only individual who will be punished for the scheme and only person to pay restitution.

For these reasons, Mr. Cobb respectfully requests that the Court sentence him to terms of 12 months and a day on Count One (conspiracy to commit bank fraud) and 24 months on Count Four (aggravated identity theft).

## II. THE PRESENTENCE REPORT

The Probation Office calculates a total offense level of 14 and criminal history category III. PSR at 4. Mr. Cobb concurs in the criminal history category but objects to the application of a two-level enhancement for a vulnerable victim under § 3A1.1. The correct total offense level is therefore 13,[1] which results in an advisory guidelines range of 18–24 months.

The two-level enhancement should not apply because the government cannot establish that Mr. Cobb knew or should have known the identity of a cognizable victim

---

[1] Mr. Cobb is only entitled to a two-level reduction for acceptance of responsibility under § 3E1.1 because his pre-acceptance offense level is less than 16.

1

at the time of the offense. Under § 3A1.1, the enhancement is appropriate where a defendant "knew or should have known that a victim of the offense was a vulnerable victim." As an initial matter, the estates of Victim 1[2] and Victim 2, in whose names the relevant accounts were, do not qualify as victims under § 3A1.1. *See, e.g.*, *United States v. Seward*, 272 F.3d 831, 840 (7th Cir. 2001) ("We cannot accept the idea that the Guidelines go so far as to recognize the deceased for purposes of the vulnerable victim enhancement."). For that reason, the enhancement can only be sustained by reference to Victim 4. *See also* PSR ¶ 36.

Mr. Cobb does not dispute that it was reasonably foreseeable that Victim 4 was in a fragile emotional state after the events of September 11, 2019. But there is no evidence that Mr. Cobb knew, or should have known, that Victim 4 was a victim of his conduct. The offense targeted various accounts in the names of Victim 1 and Victim 2, not Victim 4. While Victim 4 may have in fact been the beneficiary of Victim 1 and Victim 2's estates based on the family's succession planning, ECF No. 26 (Plea Agreement) at 8, there is no evidence that Mr. Cobb was aware of that. Applying the enhancement therefore requires imputing to Mr. Cobb the knowledge of the ultimate disposition of Victim 1 and Victim 2's estates. There is nothing in the record to establish that Mr. Cobb had any familiarity with the affairs of Victim 1 and Victim 2 (by, for example, serving as a financial advisor or lawyer) such that he should have known that Victim 4 was the beneficiary. Hence, the authority cited by the government, which involves conduct specifically targeting known victims, does not resolve the issue here. *See United States v. Haggard*, 41 F.3d 1320, 1325–26 (9th Cir. 1994) (defendant "specifically targeted" the family of a missing girl with lies about knowledge of her whereabouts); *United States v. Williams*, 441 F.3d 716, 725–26 (9th Cir. 2006) (defendant, a financial planner, targeted an elderly client with an eighth-grade education whom he knew had just lost his

---

[2] This memorandum borrows the numbering convention set forth in the plea agreement, *i.e.*, Victim 1 corresponds to the husband, Victim 2 the wife, Victim 3 the son, and Victim 4 the daughter.

2

brother); *United States v. Parolin*, 239 F.3d 922 (7th Cir. 2001) (defendant specifically targeted an two elderly victim whose finances he handled before her spouse's deaths).

Given that Mr. Cobb's conduct was directed toward financial accounts in the names of Victim 1 and Victim 2, the enhancement should not apply.[3]

### III. THE APPROPRIATE SENTENCE

**A.  Mr. Cobb Committed a Serious Offense During a Time of Significant Personal Difficulty, But Has Established Stability Since**

Mr. Cobb's life had fallen apart by the time of the latter half of 2019. His mother had lost her home, his uncle, to whom he was very close, passed away, and he himself became homeless after separating with the mother of his son. PSR ¶ 28. His anxiety and depression, which he had suffered throughout his life, came on more acutely than ever. *Id.* Unsurprisingly, Mr. Cobb began abusing anti-anxiety medications and opioids around this period, *id.* ¶ 79, reaching a crescendo around the time of the offense.

Moreover, Mr. Cobb did not learn effective coping mechanisms growing up. From his earliest years, his father was addicted to crack cocaine, leading to a verbally abusive relationship between his parents who eventually divorced. PSR ¶¶ 64–65. His neighborhood suffered pervasive violence, and Mr. Cobb lost friends to gun violence as he grew up. *Id.* ¶ 66. Another child brought a gun to school and brandished it in Mr. Cobb's face, terrifying him. *Id.*

However, since the conspiracy terminated in November 2019, *see* ECF No. 26 at 9 (listing conspiracy "continuing until at least November 8, 2019") Mr. Cobb has managed to establish the stability that eluded him before. He has a safe, loving home with his girlfriend and his stepdaughter, PSR ¶ 69, and has been working consistently while on pretrial release. Most recently, he is working as an audio technician for which he is being paid a significant wage. *Id.* ¶ 83.

---

[3] Mr. Cobb also objects to the PSR's assertion that he was not in compliance with pretrial release due to his positive drug tests immediately following his arrest, based upon marijuana use prior to his arrest.

3

**B.   Mr. Cobb Appears to Be the Sole Individual Punished For This Conspiracy and Future Payor of Restitution**

The Court should also condition two, additional § 3553 aims in sentencing Mr. Cobb.

*First*, it appears that Mr. Cobb will be the only defendant punished for this conspiracy that involved multiple other individuals. It is clear that the overall scheme involved others, based not only on the conspiracy charge, but from a review of the discovery. Based on warrant applications and other investigative materials, it appears the government has identified at least two other individuals who participated in a conspiracy to loot the assets of the estate. *See also* ECF No. 26 (Plea Agreement) at 9 ("[D]efendant knowingly agreed with more than one person to commit bank fraud…."). Nonetheless, Mr. Cobb was charged in a single-defendant indictment, and it does not appear that there are pending or resolved charges against anyone else for their involvement. *See* PSR at 2 (detailing no codefendants or related cases). Hence, despite benefiting from only some fraction of the overall amount of money stolen, Mr. Cobb appears to be the only person who will be punished for his involvement. The Court should consider the disparity of Mr. Cobb's punishment versus other, similarly culpable individuals that will not be. *See* 18 U.S.C. § 3553(a)(6).

*Second*, as the sole person sentenced for his involvement in this scheme, Mr. Cobb is the only person from whom restitution can be drawn. And it is no meager amount. Once sentenced, Mr. Cobb will be the sole payor toward approximately $140,000 in restitution. *See* PSR ¶ 111. While he would be jointly and severally liable for the amount with his co-conspirators, as a matter of practice he would have paid only a portion of the total amount as all co-defendants shared in paying down the figure. Hence, Mr. Cobb will likely be the only person to pay toward restitution or serve time in custody for this scheme.

Similarly, the Court should consider the objective of ensuring full restitution payment to the financial institutions who suffered the loss when fashioning the

appropriate length of the sentence. As detailed above, Mr. Cobb has managed to establish a productive working life since the conspiracy's end. Through his training and work in audio engineering, Mr. Cobb has begun earning a strong wage with which he will be able to pay toward restitution. PSR ¶ 83 (stating he earns $41 per hour).

### C. A 36 Month Total Sentence Represents a Significant and Deterring Sanction in Light of Mr. Cobb's Prior Sentences

Thirty-six months moreover effectuates the goal of progressively increasing punishment given Mr. Cobb's previously imposed sentences. The PSR reflects that Mr. Cobb's longest single sentence was a ninety-day term in Los Angeles county jail in 2012, far shorter than the three years requested here. PSR ¶ 54. His other jail sentences include a 60-day term in 2009, *id.* ¶ 53, and sixteen days spread between three petty driving offenses before that, *id.* ¶¶ 49–51. Hence, even assuming Mr. Cobb was not released prior to his half-time date due to the Los Angeles county jails' notorious overcrowding, the requested sentence reflects an approximately ten times longer term than his prior periods of custody combined.

Moreover, it appears Mr. Cobb is amenable to deterrence. This case represents Mr. Cobb's only conviction since his 2012 conviction for which he received the 90-day jail term. While he ultimately reoffended during a period of significant personal difficulty, his history suggests that the requested punishment of 36 months, in combination with a three-year term of supervised release, will be more than adequate to ensure that Mr. Cobb continues his recovery and growth since the offense.

### D. The Sentence Requested by the Government and Probation Exceeds the Goals of § 3553

Mr. Cobb's offense is undoubtedly serious. Beyond the significant financial amount, it is obvious that it has caused Victim 4 a significant psychological harm in the wake of the events of September 11, 2019. However, the sentences recommended by the government and Probation—24 months for the aggravated identity theft and either high-end or mid-range, respectively, for the bank fraud conspiracy—exceed what is necessary

5

to accomplish the purposes of § 3553. At its core, this is an identity theft case that led to Mr. Cobb and his co-conspirators stealing approximately $140,000 in assets from the estates of Victim 1 and Victim 2. The impersonation of the deceased Victim 1 and Victim 2, and concomitant harm to Victim 4, is unquestionably an aggravating factor. But the government has sought to reflect that aggravation in two significant ways already. First, the government charged the § 1028A count and required its inclusion in the plea. And second, the government has sought—and Probation has assessed—a two-level enhancement for a vulnerable victim. To also impose a sentence at the mid-range or high-end goes beyond the purposes of § 3553, particularly where there is not other significant aggravation that would take this case beyond a normal identity theft matter, where dropped § 1028A counts and low-end recommendations are not uncommon for defendants, like Mr. Cobb, who plead guilty. *See* 18 U.S.C. § 3553(a)(6).

\* \* \*

Mr. Cobb's life is in a significantly different place than it was in 2019. He understands and recognizes that a suitably serious sanction is appropriate for his conduct. Given his capacity to succeed and the stability he has found since the offense, three years is that sanction.

### IV. CONCLUSION

For the foregoing reasons, Mr. Cobb respectfully requests that the Court sentence him to a total term of 36 months and a day, comprised of a year and a day on Count 1 (conspiracy to commit bank fraud) and twenty-four months on Count 4 (aggravated identity theft).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 9, 2023    By */s/ Adam Olin*
                         ADAM OLIN
                         Deputy Federal Public Defender

6

            Attorneys for Kristopher Brent Cobb